IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02957-PAB-MJW

STANLEY CREIGHTON LOBATO-WRIGHT, and
TODD ANTHONY LOBATO-WRIGHT

Plaintiffs,

v.

GERRITT KOSER,

Defendant.

---

**REPORT AND RECOMMENDATION ON**

**DEFENDANT GERRITT KOSER'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND JURY DEMAND (Docket No. 41);**

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT (Docket No. 46); and**

**PLAINTIFFS' MOTION TO STRIKE EXHIBITS TO MOTION TO DISMISS (Docket No. 50)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Stanley and Todd Lobato-Wright have been domestic partners for 25 years, and have lived in publicly subsidized housing in Colorado since at least 1995. In 2011, they were arrested and charged with theft because they allegedly did not disclose Stanley's income on their annual Section 8 renewal applications. The charges were ultimately dismissed. Plaintiffs now bring a malicious-prosecution claim, among others, under 42 U.S.C. § 1983 against Gerritt Koser—the Denver Housing Authority ("DHA") attorney that they believe was behind the prosecution.

2

Defendant moves to dismiss for failure to state a claim.  (Docket No. 41.)  In addition to opposing Defendant's motion on the merits, Plaintiffs move in the alternative for leave to amend their complaint.  (Docket Nos. 46, 49.)  District Judge Philip A. Brimmer referred both motions to the undersigned.  The Court concludes that amendment would not be futile because the proposed pleading would state a claim for malicious prosecution—and therefore that Plaintiffs should prevail on both motions.

The Court has reviewed the parties' filings (Docket Nos. 41, 46, 49, 50, & 51), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court makes the following report and recommendation.

## Legal Standards

Defendant's motion to dismiss is brought under Rule 12(b)(6).  As Judge Brimmer states it:

> To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's claim to relief plausible on its face. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.  If a complaint's allegations are so general that they encompass a wide swath of conduct, much of it innocent, then plaintiff has not stated a plausible claim.  Thus, even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

*McDonald v. Sch. Dist. No. 1*, ___ F. Supp. 3d ___, 2015 WL 1258211, at *2 (D. Colo. Mar. 17, 2015) (internal citations, quotation marks, and alterations omitted).  For purposes of resolving defendants' motion to dismiss, the Court considers only the

allegations contained in plaintiff's complaint, plus any matters of which the Court may take judicial notice. See Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).

Plaintiffs' motion to amend their pleadings is brought under Rule 15(a)(2), because they have already amended once. As Judge Brimmer explains:

> . . . Rule 15 instructs courts to freely give leave to amend when justice so requires. Nevertheless, denying leave to amend is justified if the proposed amendments are unduly delayed, unduly prejudicial, futile, or sought in bad faith. As a general rule, the Court retains the discretion to permit such amendments. The Court must delineate its rationale if it refuses leave to amend.

Ervin v. Health Servs. Adm'r Keller, No. 12-cv-02602-PAB-MEH, 2015 WL 847475, at *1 (D. Colo. Feb. 25, 2015) (internal citations, quotation marks, and alterations omitted).

**Facts as Alleged**

**I.     First Amended Complaint**

As alleged in the First Amended Complaint (Docket No. 13), Plaintiffs have lived in Section 8 housing since 1995, and in Section 8 housing administered by DHA since since 2000. Plaintiffs are a same-sex couple; Todd is also disabled, and Stan is his primary caretaker. Plaintiffs disclosed to DHA in 2000 that they were life partners and that Stan is Todd's caretaker; DHA instructed Plaintiffs to list Todd as "single" on their housing application and to list Stan as a "live-in aide." Plaintiffs did so. Plaintiffs were in fact not married, as Colorado law at the time did not allow for same-sex marriage.

In 2002, Plaintiffs adopted a special-needs son. At first, only Stan was listed on the adoption papers. Later, following changes in state law, Todd was added as a legal guardian.

In 2005, after a five-year wait, Plaintiffs' application for a subsidized home-purchase program through DHA was denied because, with Stan's income included, Plaintiffs earned too much to qualify for the program.

In 2010, Todd's mother moved to Denver.  Plaintiffs engaged in a lengthy struggle with DHA to secure certain Section 8 approvals for Todd's mother.  During these struggles, Defendant developed an acrimonious working relationship with Plaintiffs.  After one meeting, Defendant's colleague shouted threats to "come after [Todd] next."  Ultimately, after Todd withdrew from the process and Colorado Legal Services took over the matter, Todd's mother's Section 8 application was approved as originally submitted.

Todd then received notice that DHA was terminating his Section 8 housing.

In fall 2011, the Denver District Attorney's office filed charges against Plaintiffs on 23 felony counts, including 20 counts of theft.  Plaintiffs were arrested and, three days later, posted bond.  On October 25, 2012, a week before Todd's trial, the DA dismissed all charges against him.  Stan's case went to trial, commencing on December 17, 2012.  The trial ended in a hung jury on December 21, 2012, and the following April the DA dismissed the charges.  Throughout the prosecution, the DA's office engaged in various petty acts of homophobia.

## II.     Proposed Second Amended Complaint

The proposed Second Amended Complaint (Docket No. 46-2 (redline version); Docket No. 51 (corrected clean version)) adds a number of material details.

5

According to the proposed pleading, Defendant made false statements to the DA's office, failed to correct false statements made by the DA's investigator, attempted to coerce Todd into withdrawing a discrimination complaint filed against Defendant; and otherwise facilitated and encouraged the DA's prosecution of Plaintiffs. (Docket No. 46-2 ¶¶ 5, 30.) Further, following the heated exchange in which Defendant's colleague threatened Todd, Defendant himself repeated the threat and accused Todd of fraud. (*Id.* ¶ 23.) Defendant instigated the DA's criminal investigation in retaliation for Todd's discrimination complaint against him, and testified during the trial that he was the "driving force" behind the criminal proceedings. (*Id.* ¶ 27.) Finally, throughout Stan's trial, Defendant repeatedly expressed his disgust at Plaintiffs' same-sex relationship. Defendant also testified at Stan's trial, "accus[ing] the Plaintiffs of being sex offenders and having obscene and pornographic pictures because they took a photograph with their infant son while they were both shirtless." (*Id.* ¶ 23.)

Also, "Todd always disclosed Stan's income (pay stubs and W-2s) for Stan's second job." (*Id.* ¶ 9.) Nonetheless, DHA refused to accept the paperwork. (*Id.* ¶ 8.) "Stan's income was always disclosed, including his W-2s. Every promotion and change in job description of Stan's second jobs were disclosed to DH[A] by Todd." (*Id.* ¶ 30.)

### III.  Documents from Plaintiffs' Arrests and Prosecutions

Defendant appended a number of public records from Plaintiffs' arrests and prosecutions to his motion to dismiss. (Docket Nos. 41-1 to 41-8.) Plaintiffs move to strike those documents, contending that their accuracy is in dispute. (Docket No. 50.) Plaintiffs misunderstand the nature of judicial notice in a Rule 12(b)(6) motion. It is true

6

that documents referenced but not attached to a complaint may be considered only if they are indisputably authentic copies. *See, e.g., Gee*, 627 F.3d at 1186 (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). But that is a limit on incorporation by reference, not a limit on judicial notice. Judicial notice constitutes an entirely separate category of facts available on a Rule 12(b)(6) motion. *Id.* As the Tenth Circuit has explained:

> [F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001). However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).

*Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). The documents adduced by Defendant are public records. Accordingly, Plaintiffs' motion to strike the exhibits should be denied. The Court will take judicial notice of the existence and contents of those records—but will not assume the truth or falsity of the statements therein.

The documents show that Plaintiffs were charged with theft, conspiracy, and forgery, for identifying Stan as a caretaker rather than a family member on the Section 8 applications—thereby avoiding the requirement to disclose Stan's income, and thereby qualifying for larger subsidies than they would have had they disclosed Stan's income. The total theft was stated as $105,000 over six and a half years.

## Discussion

All versions of the complaint allege claims for (1) false imprisonment, (2) unlawful arrest, and (3) malicious prosecution.

### I. Malicious Prosecution

Under Tenth Circuit precedent, "a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes,* 528 F.3d 790, 799 (10th Cir. 2008); *see also Novitsky v. City Of Aurora,* 491 F.3d 1244, 1258 (10th Cir. 2007) (addressing claim under both the Fourth and Fourteenth Amendments). Where, as here, the prosecution involved more than one charge, the third element (probable cause) must be determined as to each charge, but the second element (favorable termination) is determined as to the entire criminal proceeding. *See, e.g., Kossler v. Crisanti,* 564 F.3d 181, 188 (3d Cir. 2009) (probable-cause element); *Johnson v. Knorr,* 477 F.3d 75, 86 (3d Cir. 2007) (favorable-termination element); *Miller v. Spiers,* 339 F. App'x 862, 868 & n.3 (10th Cir. 2009) (favorable-termination element).

Defendant challenges the first three elements. More specifically, Defendant argues that (1) there are no allegations that Defendant was involved in the prosecution; (2) that, as to Stan's case at least, the prosecution did not terminate in Plaintiffs' favor; and (3) that nothing alleged in the complaint vitiates the probable cause shown in the

affidavits supporting Plaintiffs' arrests. The Court agrees with Defendant that the First Amended Complaint does not plausibly allege Defendant's role or a lack of probable cause. But the proposed Second Amended Complaint does.

***Defendant's Role***. A § 1983 claim must be based on the Defendant's own participation, either actively or as the primary decisionmaker. *See Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013). The Tenth Circuit has effectively incorporated this rule into the first element of a malicious-prosecution claim. Further, because the prosecutor is something of an intervening cause of the prosecution, the allegations must establish that the defendant was an instrumental part of the initiation or continuation of the criminal proceedings. *Pierce v. Gilchrist*, 359 F.3d 1279, 1291–94 (10th Cir. 2004); *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1193–95, 1207–08 (D. Colo. 2006). Defendant argues that Plaintiffs have failed to plausibly allege any facts establishing this element.

As to the First Amended Complaint, Defendant is right. The First Amended Complaint mentions Defendant as a key player in DHA's investigation of Plaintiffs, but does not otherwise connect him to the District Attorney's prosecution of the charges against Plaintiffs. The proposed Second Amended Complaint is another story. It alleges that Defendant participated throughout the investigation and prosecution of Plaintiffs, committing wrongs of both commission and omission in the process. It alleges that Defendant was motivated by both homophobic animus and retaliatory intent, that Defendant fabricated allegations to initiate the criminal proceedings, and that Defendant continued those fabrications to and through testifying at trial. This is enough

9

to plausible allege causation and participation for purposes of a § 1983 malicious prosecution claim.

*Favorable Termination*. As alleged by Plaintiffs, the charges against Todd were dismissed by the prosecution on October 31, 2012, before trial, while the charges against Stanley were dismissed by the prosecution in April 2013, after a hung jury. Defendant argues that these outcomes do not amount to favorable determinations because they do not pass on the merits of the case.

But that is not the rule in the Tenth Circuit. In the Tenth Circuit, the voluntary dismissal of charges by the prosecutor counts as a favorable termination if the circumstances surrounding the dismissal suggest the innocence of the defendant. *Wilkins v. DeReyes*, 528 F.3d 790, 802–04 (10th Cir. 2008). For example, if the circumstances suggest that the prosecution was unable to meet its burden of proof, the dismissal would be a favorable termination for purposes of a malicious prosecution claim; but if the circumstances suggest that the prosecution struck a deal, the dismissal would *not* be a favorable termination. *Id.* At this stage of proceedings, the Court must draw all reasonable inferences in Plaintiffs' favor—and the allegations in the First Amended Complaint can reasonably support the inference that the prosecution could not meet its burden of proof on the charges against either Todd or Stanley.

*Probable Cause*. Defendant argues that, even taking the allegations in the First Amended Complaint to be true, Plaintiffs' arrests were supported by probable cause. "Probable cause exists 'where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a

10

prudent man in believing that an offense has been or is being committed.'" *Marshall v. Columbia Lea Regional Hosp.,* 345 F.3d 1157, 1166 (10th Cir. 2003) (quoting *Karr v. Smith,* 774 F.2d 1029, 1031 (10th Cir. 1985)). The affidavits supporting Plaintiffs' arrest warrants, on their face, establish probable cause. Plaintiffs do not allege that anything material in the arrest warrants is actually false; Plaintiffs do allege that a few of the statements attributed to Stanley were fake—but even if those statements were removed, the essential allegations of stealing housing subsidies by failing to disclose Stanley's income remain in the affidavits. Thus, removing those statements would not vitiate probable cause.

That said, a warrant's probable cause can also be vitiated by showing the *omission* of relevant facts. *See, e.g., Stewart v. Donges,* 915 F.2d 572, 582 (10th Cir. 1990). Here, the First Amended Complaint falls short, but the proposed Second Amended Complaint does not. In the First Amended Complaint, Plaintiffs repeatedly allege that Plaintiffs disclosed their personal relationship to DHA as they filled out their forms, and that Plaintiffs chose not to list Stanley as a family member at DHA's direction. But even if these facts were included in the arrest affidavits, the essential elements of the crime remain: Plaintiffs knowingly failed to disclose Stanley's income, and as a result they received housing subsidies to which they were not entitled. By contrast, the Second Amended Complaint alleges, repeatedly, that Plaintiffs disclosed not only their personal relationship to DHA, but also all of Stanley's income. *These* facts, if included in the arrest affidavits, would have vitiated probable cause. As a result, the proposed Second Amended Complaint plausibly alleges a lack of probable cause.

11

In sum, the Court concludes that the First Amended Complaint fails to state a claim for malicious prosecution—but that the proposed Second Amended Complaint *does* adequately state such a claim.

## II. Unlawful Arrest & False Imprisonment

Defendant argues that, to the extent Plaintiffs state a claim for unlawful arrest or false imprisonment, such claims expired before this lawsuit was filed. Although an affirmative defense, the statute of limitations can be raised on a motion to dismiss if the complaint itself plainly establishes the defense. *ASARCO, LLC v. Union Pac. R.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n. 3 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period").

As recently explained by Judge Jackson:

> "[T]he limitation period for an action under 42 U.S.C. § 1983 . . . is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras,* 484 F.3d 1236, 1238 (10th Cir. 2007). In Colorado, the applicable statute of limitations is two years. *See Myers,* 738 F.3d at 1194 (citing C.R.S. § 13–80–102(1)(a)). However, "[f]ederal law determines the date on which the claim accrues and, therefore, when the limitations period starts to run." *Id.* Under federal law, "[a] claim of false imprisonment accrues when the alleged false imprisonment ends." *Id.* "The false imprisonment ends . . . when the victim is released or when the victim's imprisonment becomes pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges." *Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008) (internal citations, quotations, and alterations omitted).

*Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 WL 1850648, at *3 (D. Colo. Apr. 21, 2015).

The first complaint in this case was filed on October 31, 2014, and therefore any claims accruing before October 31, 2012, are expired. Here, the pleadings establish that Plaintiffs were arrested in the fall of 2011—and therefore, any false-arrest claim is expired. Further, Plaintiffs allege that they bonded out and were relased after three nights. Thus, the false-imprisonment claim is also expired.

Accordingly, Defendant's motion to dismiss should be granted as to the false imprisonment and unlawful arrest claims. Nothing in the proposed Second Amended Complaint cures the staleness of the claims; therefore, Plaintiff's motion to amend should be denied as to these the false imprisonment and unlawful arrest claims.

### III. Conclusion

The Court concludes that the First Amended Complaint fails to state a claim under any of Plaintiffs' three theories, but that the proposed Second Amended Complaint would save the malicious-prosecution claim. Accordingly, the Court concludes that Plaintiffs should be granted leave to file a Second Amended Complaint alleging only that malicious-prosecution claim.

### Recommendations

For the foregoing reasons, the Court **RECOMMENDS** that:

- Defendant Gerritt Koser's Motion to Dismiss Plaintiffs' Amended Complaint and Jury Demand **(Docket No. 41) be GRANTED IN PART AND DENIED IN PART**, as set forth above;

- Plaintiffs' Motion for Leave to File Second Amended and Supplemental Complaint **(Docket No. 46) be GRANTED IN PART AND DENIED IN PART** as set forth above; and

- Plaintiff's Motion to Strike Exhibits to Motion to Dismiss **(Docket No. 50) be DENIED**.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated: June 25, 2015  /s/ Michael J. Watanabe
Denver, Colorado  Michael J. Watanabe
United States Magistrate Judge